## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| _____ | § | |
| | § | |
| JASON R. SEARCY, solely in his | § | Adv. No._____ |
| capacity as Trustee of the Exempt Assets | § | |
| Trust, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SCOTT Y. WOOD, an individual, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, BREACH OF FIDUCIARY DUTIES, AND DISALLOWANCE OF CLAIMS

Plaintiff Jason R. Searcy (the "Trustee"), solely in his capacity as Trustee of the Exempt

Assets Trust under the *First Amended Joint Chapter 11 Plan of Reorganization dated September*

*18, 2015* of ERG Intermediate Holdings, LLC and its affiliated debtors (collectively, the

"Debtors"), alleges as follows:

## NATURE OF THE ACTION

1.      Prior to these bankruptcy cases, defendant Scott Y. Wood ("Wood") was the

owner and President of ERG Resources, LLC ("ERG Resources"), an oil and gas production

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

company, and the sole manager of each of the Debtor limited liability companies.  Wood

dominated and controlled the Debtors and operated them by his own rules, and used the

Debtors' assets to fund his lavish lifestyle.

2.     Toward that end, during the two years preceding bankruptcy, Wood caused the

Debtors to (a) pay him over $25 million in distributions and salary; (b) spend more than $5

million to sponsor and fund his polo team, including the costs for the polo players and their

horses to live and compete in California and Florida; (c) pay approximately $700,000 for

landscaping, fuel, utility and related maintenance expenses for his homes; and (d) pay more than

$2.35 million to his divorce lawyers and other professionals engaged by him during his

matrimonial proceedings.  Wood used the Debtors as his personal bank account until his

resignation the day before the bankruptcy filing, taking one last check for $300,000 just before

he walked out the door.

3.     Wood's conduct during the years preceding these bankruptcy cases was not in the

Debtors' best interests, was consistently driven by self-interest, and resulted in massive transfers

of corporate assets to Wood or for his benefit that are avoidable as intentional and/or

constructively fraudulent transfers.  Based on the Debtors' books and records, including the

Debtors' general ledgers and related reports, the Trustee is informed and believes that Wood

diverted more than $34,000,000 from the Debtors for his own use and benefit and for no

consideration.  By this adversary proceeding, the Trustee seeks to avoid and recover the

fraudulent transfers from Wood, together with interest, costs, and attorneys' fees.  In addition,

the Trustee seeks to recover damages from Wood arising from his breach of fiduciary duties of

care and loyalty.

## JURISDICTION AND VENUE

4.     This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.     The Trustee brings this action on behalf of the Exempt Assets Trust and its beneficiaries, the general unsecured creditors of the above-captioned Debtors, in accordance with the Debtors' *First Amended Joint Chapter 11 Plan of Reorganization dated September 18, 2015* (the "Plan"), which was confirmed by this Court's Order entered on October 30, 2015 [Docket No. 655].

8.     On information and belief, Wood is an individual who maintains a principal residence in Houston, Texas.  Wood, through two of his affiliates, owns 100% of ERG Intermediate Holdings, LLC, which is a holding company that owns each of the other Debtors. At all relevant times, Wood was the sole manager and President of each of the Debtors.

## FACTUAL ALLEGATIONS

9.     On April 30, 2015 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Code.

10.     Prior to the Petition Date, ERG Intermediate Holdings, LLC ("ERG Intermediate") was a holding company that owned, directly or indirectly, each of the other Debtors.  Scott Y. Wood ("Mr. Wood"), through two affiliates that he owned and controlled,

ERG Operating, LLP and CTS Properties, Ltd. ("CTS"), owned one-hundred percent of the membership units in ERG Intermediate.

11.     ERG Intermediate solely owned ERG Resources. ERG Resources was a privately owned oil and gas producer that was formed in 1996. As of the Petition Date, ERG Resources (a) directly operated certain oil and gas properties in Texas and (b) operated certain oil and gas properties in California through its wholly-owned subsidiary, ERG Operating Company, LLC ("ERG Operating Co.").

12.     Prior to the Petition Date, the Debtors' corporate headquarters was located in Houston, Texas.

13.     ERG Resources, as borrower, certain lenders, and CLMG Corp., as administrative agent and collateral agent, are parties to that certain Credit Agreement (the "Original Credit Agreement") dated as of January 24, 2013, as amended (the "First Amendment," and together with the Original Credit Agreement, the "Pre-Petition Credit Agreement").

14.     The Original Credit Agreement provided for $230 million of term loans and $120 million of delayed draft term loans. An additional $22 million term loan was provided pursuant to the First Amendment. As part of the First Amendment, Mr. Wood signed in his individual capacity a conditional guaranty regarding the obligations arising under the Pre-Petition Credit Agreement (the "Wood Guaranty"). All of the other Debtors are guarantors under the Pre-Petition Credit Agreement.

15.     As of the Petition Date, there was approximately $372 million in aggregate principal amount outstanding under the Senior Prepetition Facility secured by liens on substantially all of the Debtors' assets. The Debtors did not make their regularly scheduled

interest or principal payments due at the end of the fourth quarter of 2014 or at the end of the first quarter of 2015.

16.     Prior to the Petition Date, the Debtors were solely managed by Wood.  On information and belief, Wood did not follow any procedures for reimbursement of his credit cards and a myriad of personal expenses.  Under Wood's direction, the Debtors paid everything. The Debtors had no boards of directors, let alone disinterested board members, to act as a check on Wood's cavalier looting of the Debtors' cash.  The distributions and other transfers made by the Debtors for Wood's personal benefit during the period May 1, 2013 through the Petition Date are described below and listed on the attached Schedules.

17.     Wood's self-dealing and rampant misuse of the Debtors' assets for his own personal benefit forms the basis for the Trustee's avoidance claims under chapter 5 of the Bankruptcy Code and breach of fiduciary duties under applicable Texas state law.

Distributions and Salary Paid to Wood

18.     With no financial restraints in place, Wood freely took "distributions" from the Debtors ("Distributions").  On information and belief, the Distributions totaled not less than $15,241,209 during the two years prior to the Petition Date, and include the transfers set forth on Exhibit A.  One such Distribution was used by Wood to purchase a 50-acre ranch in Santa Barbara, used as a polo field, which was ultimately deeded to Wood.  The Distributions were unrelated to the Debtors' operations or profits and were simply a source of cash for Wood.

19.     Wood also took excessive sums from the Debtors denominated as salary ("Salary"). Upon information and belief, in the two years prior to the Petition Date, Wood took at least $10,800,000 – including at least $1.8 million in the 180 days prior to the Petition Date -- in Salary even though he had no employment agreement or other mandate authorizing the payment of such

substantial sums.  Indeed, based on the haphazard method of the Salary payments (monthly transfers

varied from $150,000 to $1,200,000), it appears Wood took "Salary" based on nothing more than his

own personal needs.  The Debtors' books and records reflect Salary payments to Wood as follows:

| Date | Salary |
|---|---|
| 5/30/2013 | $450,000 |
| 6/30/2013 | $300,000 |
| 7/31/2013 | $450,000 |
| 8/31/2013 | $900,000 |
| 9/30/2013 | $1,200,000 |
| 10/31/2013 | $900,000 |
| 11/30/2013 | $600,000 |
| 12/31/2013 | $450,000 |
| 1/31/2014 | $450,000 |
| 2/28/2014 | $300,000 |
| 3/31/2014 | $600,000 |
| 4/30/2014 | $450,000 |
| 5/31/2014 | $300,000 |
| 6/30/2014 | $450,000 |
| 7/31/2014 | $450,000 |
| 8/31/2014 | $450,000 |
| 9/30/2014 | $150,000 |
| 10/31/2014 | $150,000 |
| 11/30/2014 | $150,000 |
| 12/31/2014 | $450,000 |
| 1/31/2015 | $300,000 |
| 2/28/2015 | $300,000 |
| 3/30/2015 | $300,000 |
| 4/30/2015 | $300,000 |
| **TOTAL** | **$10,800,000** |

**ERG Polo Expenses**

20.     Wood plays polo and participates in polo tournaments around the country, an

endeavor fully funded by the Debtors prior to the Petition Date.  Specifically, Wood created the

ERG Polo Team and siphoned millions of dollars from the Debtors to sponsor the team and polo

playing in general (collectively, the "Polo Expenses").  For example, Wood, on behalf of ERG

Resources, contracted with players from South America to play polo games for the ERG Polo

Team and paid the team players anywhere between $200,000 and $2 million for a season of

polo playing plus bonuses for winning tournaments, depending upon the players' experience and the number of horses provided by the player. ERG Resources' cash was also used to pay for the horses' stables and the players' airfare and housing.

21.     Based on the Debtors' books and records, the Trustee believes that the Debtors spent not less than $5,949,589 on Polo Expenses, and includes the transfers listed on Exhibit B. The Debtors paid the Polo Expenses for Wood's personal benefit without receiving any consideration, let alone reasonably equivalent value.

**Additional Personal Expenses**

22.     Wood also caused the Debtors to maintain his 50-acre ranch on Lambert Road in Santa Barbara, California, including the substantial cost of landscaping and irrigating the polo field, and paying fuel, sanitation, and utility expenses at Wood's home in Wellington, Florida (collectively, "Property Maintenance"). The Property Maintenance included extraordinary expenses for water service at Lambert Road and at least one penalty of $29,000 imposed by the water district for misuse during a single month. The Debtors received no benefit of consideration in exchange for the payment of the Property Maintenance. On information and belief, the Debtors paid approximately $700,000 on behalf of Wood for Property Maintenance, including the transfers listed on Exhibit C.

23.     Wood's unrestrained use of the Debtors' cash is highlighted by the Debtors' payments to various professionals retained by Woods in connection with his divorce. On information and belief, the Debtors paid Wood's matrimonial professionals ("Wood's Divorce Expenses") at least $2,325,818, including the transfers listed on Exhibit D.

24.     In sum, between May 1, 2013 and the Petition Date, Wood caused the Debtors to pay Distributions, Salary, Polo Expenses, Property Maintenance, and Wood's Divorce Expenses

(collectively, the "Personal Transfers") totaling at least $34,000,000.  The Personal Transfers were made solely for Wood's benefit.  The Debtors did not receive any value from the Personal Transfers, and Wood did not reimburse the Debtors for the Personal Transfers.

**FIRST CLAIM FOR RELIEF**
**AVOIDANCE OF FRAUDULENT TRANSFERS**
**(11 U.S.C. § 548(a)(1)(A))**

25.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

26.     Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

27.     The Personal Transfers were made for Wood's personal benefit and with the actual intent to hinder, delay, or defraud the Debtors' creditors.  The requisite intent is supplied by Wood through his dominion and control of the Debtors and the personal nature of the transfers.

28.     Wood's actual fraudulent intent can also be inferred from at least the following "badges of fraud":  (a) the Personal Transfers were made to an insider/Wood; (b) ERG Resources retained control of a Learjet notwithstanding substantial Personal Travel Expenses incurred solely for the benefit of Wood; (c) the Personal Transfers were not publicly disclosed; (d) the Personal Transfers were not the subject of arms-length negotiation, or any negotiation; (e) the Debtors received no identifiable consideration for the Personal Transfers; (f) the Personal Transfers were made after substantial debt was incurred by the Debtors under the Prepetition Credit Agreement; and (g) the Debtors were insolvent or became insolvent shortly after making the Personal Transfers.

29.     The Trustee is entitled to an order and judgment under 11 U.S.C. § 548 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided

and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value.

## SECOND CLAIM FOR RELIEF
## AVOIDANCE OF FRAUDULENT TRANSFERS
## (11 U.S.C. §§ 548(a)(1)(B))

30.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

31.     Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

32.     The Debtors received less than reasonably equivalent value in exchange for the Personal Transfers.

33.     The Trustee is informed and believes that when the Debtors made each of the Personal Transfers, the Debtors were (a) insolvent or became insolvent as a result of such Personal Transfers; (b) engaged in or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur or believed they would incur debts beyond their ability to pay as such debts matured.

34.     The Trustee is entitled to an order and judgment under 11 U.S.C. § 548 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value.

## THIRD CLAIM FOR RELIEF
## AVOIDANCE OF FRAUDULENT TRANSFERS

### (11 U.S.C. § 544, Texas Bus. & Comm. Code §§ 24.005(a)(1) and 24.006(a))

35.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

36.     Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

37.     The Personal Transfers were fraudulent as to a creditor whose claim arose before or after the transfers were made, and such creditor would have the right to avoid the transfer under Texas law.

38.     The Personal Transfers were made for Wood's personal benefit and with the actual intent to hinder, delay, or defraud the Debtors' creditors.  The requisite intent is supplied by Wood through his dominion and control of the Debtors and the personal nature of the transfers..

39.     Wood's actual fraudulent intent can also be inferred from at least the following "badges of fraud":  (a) the Personal Transfers were made to an insider/Wood; (b) ERG Resources retained control of a Learjet notwithstanding substantial Personal Travel Expenses incurred solely for the benefit of Wood; (c) the Personal Transfers were not publicly disclosed; (d) the Personal Transfers were not the subject of arms-length negotiation, or any negotiation; (e) the Debtors received no identifiable consideration for the Personal Transfers; (f) the Personal Transfers were made after substantial debt was incurred by the Debtors under the Prepetition Credit Agreement; and (g) the Debtors were insolvent or became insolvent shortly after making the Personal Transfers.

40.    The Trustee is entitled to an order and judgment under 11 U.S.C. § 544 and Texas Bus. & Comm. Code §§ 24.005 and 24.006 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value, plus costs and reasonable attorneys' fees.

### FOURTH CLAIM FOR RELIEF
### AVOIDANCE OF FRAUDULENT TRANSFERS
### (11 U.S.C. § 544, Texas Bus. & Comm. Code §§ 24.005(a)(2) and 24.006(b))

41.    The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

42.    Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

43.    The Personal Transfers were fraudulent as to a creditor whose claim arose before or after the transfers were made, and such creditor would have the right to avoid the transfer under Texas law.

44.    The Trustee is informed and believes that when the Debtors made each of such Personal Transfers, the Debtors were (a) insolvent or became insolvent as a result of such Personal Transfers; (b) engaged in or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur or believed they would incur debts beyond their ability to pay as such debts matured.

45.    The Debtors did not receive reasonably equivalent value in exchange for the Personal Transfers to Wood.

46.    The Trustee is entitled to an order and judgment under 11 U.S.C. § 544 and Texas Bus. & Comm. Code §§ 24.005 and 24.006 that each of the Personal Transfers made by the

Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value, plus costs and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
## RECOVERY OF AVOIDED FRAUDULENT TRANSFERS
## (11 U.S.C. § 550)

47.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

48.     As to each of the Personal Transfers described above, Wood was either (i) the initial transferee, (ii) the entity for whose benefit the transfer was made, or (iii) an immediate or mediate transferee of the transfer.

49.     Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to recover from Wood for the benefit of the Exempt Assets Trust the proceeds or value of the Personal Transfers that are avoided under 11 U.S.C. §§ 544 and/or 548.

50.     The Trustee seeks a judgment against Wood equal to the value of the Personal Transfers described in the Claims for Relief above, and the proceeds thereof, plus costs and reasonable attorneys' fees in accordance with Texas Bus. & Comm. Code § 24.013.

## SIXTH CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTIES AND SELF-DEALING

51.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

52.     At all relevant times, Wood directly or indirectly owned a majority of the interests of the Debtors, and controlled them as the sole manager of each of the Debtors.

53.     As the majority owner and sole manager of the Debtors, Wood owed to the Debtors fiduciary obligations of obedience, loyalty, and care.

54.     Wood breached his fiduciary duties to the Debtors by causing the Debtors to make the Personal Transfers.  The Personal Transfers were made for Wood's benefit, did not benefit the Debtors, and constitute a breach of the duties of loyalty and care.  Among the consequences of Wood's elevation of his personal interests over the Debtors' interests was that the debt-laden Debtors were unable to meet the challenges posed by the fall of oil prices in 2014.

55.     Wood was "interested" in the Personal Transfers because he personally benefitted from each transaction.  The Personal Transfers were unfair to the Debtors and their creditors, were self-dealing transactions, and constituted a waste of corporate assets by Wood.

56.     The Debtors and their unsecured creditors have been damaged by Wood's breach of fiduciary duty and self-dealing in an amount to be determined at trial, but which is as least the value of the Personal Transfers.

### SEVENTH CLAIM FOR RELIEF
### DISALLOWANCE OF CLAIMS
### (11 U.S.C. § 502(d))

57.     The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

58.     The Trustee seeks entry of a judgment pursuant to 11 U.S.C. § 502(d) disallowing any claims that Wood has filed or that may be scheduled in the Debtors' bankruptcy case unless and until Wood has paid all amounts owing to the Debtors' estates and the Trust.

### PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, the Trustee requests that the Court enter judgment against Wood as follows:

(1)     On Claims One through Five, for a determination and judgment that the

Personal Transfers from the Debtors are avoided as fraudulent transfers under 11 U.S.C. §§ 544 and 548 and Texas Bus. & Comm. Code §§ 24.005 and 24.006, and that the Trustee is entitled to recover said transfers or the value thereof in an amount to be proven at trial from Wood under 11 U.S.C. § 550;

(2)    On Claim Six, for a determination and judgment that Wood is liable for breach of fiduciary duties in an amount to be determined at trial, but which is at least the value of the Personal Transfers;

(3)    On Claim Seven, for a determination and judgment that all claims asserted by Wood against the Debtors, whether filed or scheduled, are disallowed pursuant to 11 U.S.C. § 502(d) unless and until Wood has paid the amounts sought herein;

(4)    Awarding the Trustee interest, costs, and reasonable attorneys' fees under applicable law, including Texas Bus. & Comm. Code § 24.013;

(5)    Granting the Trustee such other and further relief as the Court deems just, proper and equitable, including the costs and expenses of this action.

Dated: April 25, 2016

*/s/ Jason R. Searcy*

Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929
Longview, TX 75606
Telephone:  (903) 757-3399
Facsimile:   (903) 757-9559
Email:  jsearcy@jrsearcylaw.com


Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:   (310) 201-0706
Email:  jpomerantz@pszjlaw.com
rfeinstein@pszjlaw.com

*Counsel to the Trustee of the Exempt Assets Trust*