# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ERG Intermediate Holdings, LLC, et al.,[1] | § | Jointly Administered |
| | § | |
| Debtors. | § | Case No. 15-31858-hdh-11 |
| | § | |
| | § | |
| JASON R. SEARCY, solely in his capacity as Trustee of the Exempt Assets Trust, | § | Adv. No. 16-03062-hdh |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SCOTT Y. WOOD, an individual, | § | |
| | § | |
| Defendants. | § | |

## AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, BREACH OF FIDUCIARY DUTIES, UNJUST ENRICHMENT AND OBJECTION TO AND <u>DISALLOWANCE OF CLAIMS</u>

Plaintiff Jason R. Searcy (the "<u>Trustee</u>"), solely in his capacity as Trustee of the Exempt Assets Trust under the *First Amended Joint Chapter 11 Plan of Reorganization dated September 18, 2015* of ERG Intermediate Holdings, LLC and its affiliated debtors (collectively, the "<u>Debtors</u>"), alleges as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are ERG Intermediate Holdings, LLC (2521); ERG Resources, L.L.C. (0408); West Cat Canyon, L.L.C. (7377); ERG Interests, LLC (2081); and ERG Operating Company, LLC (8385). ERG Intermediate Holdings, LLC is the direct or indirect parent of each of its affiliated Debtors. The mailing address for each of the Debtors, with the exception of ERG Operating Company, LLC, is 333 Clay Street Suite 4400, Houston, TX 77002. The mailing address for ERG Operating Company, LLC is 4900 California Avenue Suite 300B, Bakersfield, CA 93309.

## NATURE OF THE ACTION

1. Prior to these bankruptcy cases, defendant Scott Y. Wood ("Wood") was the owner and President of ERG Resources, LLC ("ERG Resources"), an oil and gas production company, and the sole manager of each of the Debtor limited liability companies. Wood dominated and controlled the Debtors and operated them by his own rules, and used the Debtors' assets to fund his lavish lifestyle.

2. Toward that end, during the two years preceding bankruptcy, Wood caused the Debtors to (a) pay him over $25 million in distributions and salary; (b) spend more than $5 million to sponsor and fund his polo team, including the costs for the polo players and their horses to live and compete in California and Florida; (c) pay over $800,000 for landscaping, fuel, utility and related maintenance expenses for his homes; (d) pay more than $2.5 million to his divorce lawyers and other professionals engaged by him during his matrimonial proceedings; and (e) spend over $2 million for his own personal travel, services and expenses. Wood used the Debtors as his personal bank account until his resignation the day before the bankruptcy filing, taking one last check for $300,000 just before he walked out the door.

3. As described below, Wood's conduct was contrary to the Debtors' best interests, was consistently driven by self-interest, and resulted in massive transfers of corporate assets to Wood or for his benefit that are avoidable as intentional and/or constructively fraudulent transfers. Based on the Debtors' books and records, including the Debtors' general ledgers and related reports, the Trustee is informed and believes that in just the two years prior to the commencement of these bankruptcy cases, and while the Debtors owed hundreds of millions of dollars to their lenders, Wood diverted more than $35,000,000 from the Debtors for his own use and benefit and for no consideration. By this adversary proceeding, the Trustee seeks to avoid and recover the fraudulent transfers from Wood, together with interest, costs, and attorneys'

fees. In addition, the Trustee seeks to recover damages from Wood arising from his breach of fiduciary duties of care and loyalty, and his unjust enrichment. Finally, the Trustee objects to, and seeks to disallow, each proof of claim filed by Wood against the Debtors.

## JURISDICTION AND VENUE

4. This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7. The Trustee brings this action on behalf of the Exempt Assets Trust and its beneficiaries, the general unsecured creditors of the above-captioned Debtors, in accordance with the Debtors' *First Amended Joint Chapter 11 Plan of Reorganization dated September 18, 2015* (the "Plan"), which was confirmed by this Court's Order entered on October 30, 2015 [Docket No. 655].

8. On information and belief, Wood is an individual who maintains a principal residence in Houston, Texas. Prior to the Petition Date (as defined below), Wood, through two of his affiliates, solely owned ERG Intermediate Holdings, LLC, which was a holding company that owned each of the other Debtors. At all relevant times, Wood was the sole manager and President of each of the Debtors.

## FACTUAL ALLEGATIONS

9. On April 30, 2015 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Code.

10. Prior to the Petition Date, ERG Intermediate Holdings, LLC ("ERG Intermediate") was a holding company that owned, directly or indirectly, each of the other Debtors. Wood, through two affiliates that he owned and controlled, ERG Operating, LLP and CTS Properties, Ltd., owned one-hundred percent of the membership units in ERG Intermediate.

11. ERG Intermediate solely owned ERG Resources. ERG Resources was an oil and gas producer that was formed in 1996. As of the Petition Date, ERG Resources (a) directly operated certain oil and gas properties in Texas and (b) operated certain oil and gas properties in California through its wholly-owned subsidiary, ERG Operating Company, LLC.

12. Prior to the Petition Date, the Debtors' corporate headquarters was located in Houston, Texas.

13. ERG Resources, as borrower, CLMG Corp., as administrative agent and collateral agent, and certain lenders were parties to that certain Credit Agreement (the "Original Credit Agreement") dated as of January 24, 2013, as amended (the "First Amendment," and together with the Original Credit Agreement, the "Pre-Petition Credit Agreement").

14. The Original Credit Agreement provided for $230 million of term loans and $120 million of delayed draft term loans. An additional $22 million term loan was provided pursuant to the First Amendment. As part of the First Amendment, Mr. Wood signed in his individual capacity a conditional guaranty regarding the obligations arising under the Pre-Petition Credit Agreement. All of the other Debtors are guarantors under the Pre-Petition Credit Agreement.

15. As of the Petition Date, there was approximately $372 million in aggregate principal amount outstanding under the Pre-Petition Credit Agreement secured by liens on substantially all of the Debtors' assets. The Debtors did not make their regularly scheduled

interest or principal payments due at the end of the fourth quarter of 2014 or at the end of the first quarter of 2015.

16. Wood was the sole manager of the Debtors prior to the Petition Date. With no oversight, Wood was able to use the Debtors' cash to fund his extravagant lifestyle. On information and belief, the Debtors had no policies, procedures or other institutional controls governing Wood's use of corporate assets for his personal benefit; if such policies, procedures or institutional controls existed in theory, they were not followed in practice. For example, the Debtors had no boards of directors or boards of managers, let alone disinterested board members or managers, to act as a check on Wood's cavalier looting of the Debtors' cash. And the lack of any oversight or control had devastating consequences for the Debtors and their creditors.

17. Distributions and other transfers made by the Debtors for Wood's personal benefit during the period May 1, 2013 through the Petition Date exceeded $35 million, and are described below and listed on the attached Exhibits. Wood's self-dealing and rampant misuse of the Debtors' assets for his own personal benefit forms the basis for the Trustee's avoidance claims under chapter 5 of the Bankruptcy Code, and breach of fiduciary duty and unjust enrichment claims under applicable Texas state law.

**Distributions and Salary Paid to Wood**

18. With no financial restraints in place, Wood freely took "distributions" from the Debtors ("<u>Distributions</u>"). On information and belief, the Distributions totaled more than $15 million during the two years prior to the Petition Date, including the transfers set forth on Exhibit A. One such Distribution was used by Wood to purchase a 50-acre ranch in Santa

Barbara, used as a polo field, which was ultimately deeded to Wood. The Distributions were unrelated to the Debtors' operations or profits and were simply a source of cash for Wood.

19. Wood also took excessive sums from the Debtors denominated as salary ("Salary"). Upon information and belief, in the two years prior to the Petition Date, Wood took at least $10,800,000 in Salary -- including at least $1.8 million in the 180 days prior to the Petition Date -- even though he had no employment agreement or other mandate authorizing the payment of such substantial sums. Indeed, based on the haphazard method of the Salary payments (monthly transfers varied from $150,000 to $1,200,000), it appears Wood took "Salary" based on nothing more than his own personal needs. The Debtors' books and records reflect Salary payments to Wood as follows:

| Date | Salary |
|---|---|
| 5/30/2013 | $450,000 |
| 6/30/2013 | $300,000 |
| 7/31/2013 | $450,000 |
| 8/31/2013 | $900,000 |
| 9/30/2013 | $1,200,000 |
| 10/31/2013 | $900,000 |
| 11/30/2013 | $600,000 |
| 12/31/2013 | $450,000 |
| 1/31/2014 | $450,000 |
| 2/28/2014 | $300,000 |
| 3/31/2014 | $600,000 |
| 4/30/2014 | $450,000 |
| 5/31/2014 | $300,000 |
| 6/30/2014 | $450,000 |
| 7/31/2014 | $450,000 |
| 8/31/2014 | $450,000 |
| 9/30/2014 | $150,000 |
| 10/31/2014 | $150,000 |
| 11/30/2014 | $150,000 |
| 12/31/2014 | $450,000 |
| 1/31/2015 | $300,000 |
| 2/28/2015 | $300,000 |
| 3/30/2015 | $300,000 |
| 4/30/2015 | $300,000 |
| **TOTAL** | **$10,800,000** |

**ERG Polo Expenses**

20.    Wood plays polo and participates in polo tournaments around the country, an opulent endeavor that appears to have been fully funded by the Debtors prior to the Petition Date. Specifically, Wood created the ERG Polo Team and siphoned millions of dollars from the Debtors to sponsor and support the team and polo playing in general (collectively, the "Polo Expenses"). For example, Wood, in the name of ERG Resources, contracted with players from South America to play polo games for the ERG Polo Team and caused the Debtors to pay the players anywhere between $200,000 and $2 million for a season of polo playing, plus bonuses for winning tournaments, depending upon the players' experience and the number of horses provided by the player. ERG Resources' cash was also used to pay for the horses' stables and the players' airfare and housing.

21.    Based on the Debtors' books and records, the Trustee believes that more than $5 million of the Debtors' cash was spent on the Polo Expenses, and includes the transfers listed on Exhibit B. The Debtors paid the Polo Expenses for Wood's personal benefit without receiving any consideration, let alone reasonably equivalent value. The Polo Expenses were unrelated to the Debtors' business operations.

**Additional Personal Expenses**

22.    Wood also caused the Debtors to maintain his 50-acre ranch on Lambert Road in Santa Barbara, California, including the substantial cost of landscaping and irrigating the polo field, and paying fuel, sanitation, and utility expenses at Wood's home in Wellington, Florida (collectively, "Property Maintenance"). The Property Maintenance included extraordinary expenses for water service at Lambert Road and at least one penalty of $29,000 imposed by the water district for misuse during a single month. The Debtors received no benefit or

consideration in exchange for the payment of the Property Maintenance. On information and belief, more than $800,000 of the Debtors' cash was used to pay the Property Maintenance, including the transfers listed on Exhibit C.

23. Wood's unrestrained use of the Debtors' cash is highlighted by the Debtors' payments to various professionals retained by Woods in connection with his divorce. On information and belief, more than $2.5 million of the Debtors' cash was used to pay Wood's matrimonial professionals ("Wood's Divorce Expenses"), including the transfers listed on Exhibit D.

24. In the two-year period prior to the Petition Date, Wood also used the Debtors' cash to pay for (a) his personal travel, at a cost of at least $1.35 million, including the payments listed on Exhibit E (the "Travel Expenses"), (b) personal services rendered on his behalf at a cost of at least $340,000, including the payments listed on Exhibit F (the "Personal Services"), and (c) his own personal expenses at a cost of at least $380,000, including the payments listed on Exhibit G (the "Personal Expenses").

25. Among Wood's Personal Expenses paid for by the Debtors were his monthly Netflix bill, songs purchased from iTunes, groceries for himself and his mother, chiropractor expenses, watch and jewelry repairs, a "Course for Anger," Costco, Walmart and other big box retailers, and $92,118 for "Idlewild Furnishings," a manufacturer and designer "of custom crafted exotic tropical wood furniture and hand crafted objects from around the world."

26. In sum, between May 1, 2013 and the Petition Date, Wood caused the Debtors to pay Distributions, Salary, the Polo Expenses, Property Maintenance, the Divorce Expenses, the Travel Expenses, and the cost of Personal Services and Personal Expenses (collectively, the "Personal Transfers") totaling at least $35,000,000. The Personal Transfers were made solely

for Wood's benefit. The Debtors did not receive any value from the Personal Transfers, and Wood did not reimburse the Debtors for the Personal Transfers.

### Wood's Proofs of Claim

27. On July 3, 2015, Wood filed four proofs of claim against certain of the Debtors as described below (collectively, "Wood's Claims").

28. Claim No. 162. Wood filed a general unsecured claim against the Debtor West Canyon, LLC in an unliquidated amount; this claim was assigned claim number 162, and asserts entitlement to unidentified "indemnity protections" apparently relating to Wood's status as "an officer and/or manager of West Cat Canyon, LLC (and/or its members)."

29. Claim No. 166. Wood filed a general unsecured claim against the Debtor ERG Resources, LLC in an unliquidated amount; this claim was assigned claim number 166, and asserts entitlement to unspecified "unpaid wages, compensation, and re-imbursement of expenses" and "indemnity protections."

30. Claim No. 170. Wood filed a general unsecured claim against the Debtor ERG Intermediate Holdings, LLC in an unliquidated amount; this claim was assigned claim number 170, and asserts entitlement to unidentified "indemnity protections" apparently relating to Wood's status as "an officer and/or manager of ERG Intermediate Holdings, LLC (and/or its members)."

31. Claim No. 173. Wood filed a general unsecured claim against the Debtor ERG Operating Company, LLC in an unliquidated amount; this claim was assigned claim number 173, and asserts entitlement to unidentified "indemnity protections" apparently relating to Wood's status as "an officer and/or manager of ERG Operating Company, LLC (and/or its members)."

**FIRST CLAIM FOR RELIEF**
AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS
(11 U.S.C. § 548(a)(1)(A))

32. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

33. Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

34. The Personal Transfers were made for Wood's personal benefit and with the actual intent to hinder, delay, or defraud the Debtors' creditors. The requisite intent is supplied by Wood through his dominion and control of the Debtors and the personal nature of the transfers.

35. Wood's actual fraudulent intent can also be inferred from at least the following "badges of fraud": (a) the Personal Transfers were made to, or for the benefit of, an insider/Wood; (b) ERG Resources retained control of a Learjet notwithstanding substantial Personal Travel Expenses incurred solely for the benefit of Wood; (c) the Personal Transfers were not publicly disclosed; (d) the Personal Transfers were not the subject of arms-length negotiation; (e) the Debtors received no identifiable consideration or benefit for the Personal Transfers; (f) the Personal Transfers were made after substantial debt was incurred by the Debtors under the Pre-Petition Credit Agreement; and (g) the Debtors were insolvent or became insolvent shortly after making the Personal Transfers.

36. The Trustee is entitled to an order and judgment under 11 U.S.C. § 548 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value.

### SECOND CLAIM FOR RELIEF
### AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 548(a)(1)(B))

37. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

38. Wood caused the Debtors to make Personal Transfers within two years of the Petition Date.

39. The Debtors received less than reasonably equivalent value in exchange for the Personal Transfers.

40. The Trustee is informed and believes that when the Debtors made each of the Personal Transfers, the Debtors were (a) insolvent or became insolvent as a result of such Personal Transfers; (b) engaged in or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur or believed they would incur debts beyond their ability to pay as such debts matured.

41. The Trustee is entitled to an order and judgment under 11 U.S.C. § 548 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value.

### THIRD CLAIM FOR RELIEF
### AVOIDANCE OF ACTUAL FRAUDULENT TRANSFERS
### (11 U.S.C. § 544, Texas Bus. & Comm. Code §§ 24.005(a)(1) and 24.006(a))

42. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

43. Wood caused the Debtors to make Personal Transfers within four years of the Petition Date.

44. The Personal Transfers were fraudulent as to a creditor whose claim arose before or after the transfers were made, and such creditor would have the right to avoid the transfer under Texas law.

45. The Personal Transfers were made for Wood's personal benefit and with the actual intent to hinder, delay, or defraud the Debtors' creditors. The requisite intent is supplied by Wood through his dominion and control of the Debtors and the personal nature of the transfers.

46. Wood's actual fraudulent intent can also be inferred from at least the following "badges of fraud": (a) the Personal Transfers were made to, or for the benefit of, an insider/Wood; (b) ERG Resources retained control of a Learjet notwithstanding substantial Personal Travel Expenses incurred solely for the benefit of Wood; (c) the Personal Transfers were not publicly disclosed; (d) the Personal Transfers were not the subject of arms-length negotiation; (e) the Debtors received no identifiable consideration or benefit for the Personal Transfers; (f) the Personal Transfers were made after substantial debt was incurred by the Debtors under the Pre-Petition Credit Agreement; and (g) the Debtors were insolvent or became insolvent shortly after making the Personal Transfers.

47. The Trustee is entitled to an order and judgment under 11 U.S.C. § 544 and Texas Bus. & Comm. Code §§ 24.005 and 24.006 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value, plus costs and reasonable attorneys' fees.

**FOURTH CLAIM FOR RELIEF**
**AVOIDANCE OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**(11 U.S.C. § 544, Texas Bus. & Comm. Code §§ 24.005(a)(2) and 24.006(b))**

48. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

49. Wood caused the Debtors to make Personal Transfers within four years of the Petition Date.

50. The Personal Transfers were fraudulent as to a creditor whose claim arose before or after the transfers were made, and such creditor would have the right to avoid the transfer under Texas law.

51. The Trustee is informed and believes that when the Debtors made each of such Personal Transfers, the Debtors were (a) insolvent or became insolvent as a result of such Personal Transfers; (b) engaged in or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur or believed they would incur debts beyond their ability to pay as such debts matured.

52. The Debtors did not receive reasonably equivalent value in exchange for the Personal Transfers to Wood.

53. The Trustee is entitled to an order and judgment under 11 U.S.C. § 544 and Texas Bus. & Comm. Code §§ 24.005 and 24.006 that each of the Personal Transfers made by the Debtors within two years of the Petition Date is avoided and, as set forth below, a judgment against Wood to recover the Personal Transfers or their value, plus costs and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### RECOVERY OF AVOIDED FRAUDULENT TRANSFERS
### (11 U.S.C. § 550)

54. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

55. As to each of the Personal Transfers described above, Wood was either (i) the initial transferee, (ii) the entity for whose benefit the transfer was made, or (iii) an immediate or mediate transferee of the transfer.

56. Pursuant to 11 U.S.C. § 550(a)(1), the Trustee is entitled to recover from Wood for the benefit of the Exempt Assets Trust the proceeds or value of the Personal Transfers that are avoided under 11 U.S.C. §§ 544 and/or 548.

57. The Trustee seeks a judgment against Wood equal to the value of the Personal Transfers described in the Claims for Relief above, and the proceeds thereof, plus costs and reasonable attorneys' fees in accordance with Texas Bus. & Comm. Code § 24.013.

## SIXTH CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTIES AND SELF-DEALING

58. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

59. At all relevant times, Wood directly or indirectly owned a majority of the interests of the Debtors, and controlled them as the sole manager of each of the Debtors.

60. As the majority owner and sole manager of the Debtors, Wood owed to the Debtors fiduciary obligations of obedience, good faith, loyalty, and care.

61. Wood breached his fiduciary duties to the Debtors by causing the Debtors to make the Personal Transfers. The Personal Transfers were made for Wood's benefit, did not benefit the Debtors, and constitute a breach of the duties of loyalty and care. Among the consequences of

Wood's elevation of his personal interests over the Debtors' interests was that the debt-laden Debtors were unable to meet the challenges posed by the fall of oil prices in 2014 and ended up insolvent and filing for bankruptcy, leaving millions of dollars in unpaid corporate debts.

62. Wood was "interested" in the Personal Transfers because he personally benefitted from each transaction. The Personal Transfers were unfair to the Debtors and their creditors, were self-dealing transactions, and constituted a waste of corporate assets by Wood.

63. Wood acted in bad faith in directing and benefitting from the Personal Transfers.

64. The Debtors and their unsecured creditors have been damaged by Wood's breach of fiduciary duty and self-dealing in an amount to be determined at trial, but which is as least the value of the Personal Transfers.

## SEVENTH CLAIM FOR RELIEF
## RESTITUTION FOR UNJUST ENRICHMENT

65. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

66. As to each of the Personal Transfers described above, Wood received benefits under circumstances that give rise to an implied or quasi-contractual obligation to return the benefits. Wood received money, goods, and services from the Debtors that in good conscience should be refunded to the Trustee.

67. Based on equitable principles of restitution for unjust enrichment, the Trustee seeks a judgment against Wood in an amount to be determined at trial, but which is at least the value of the Personal Transfers.

**EIGHTH CLAIM FOR RELIEF**
**OBJECTION TO WOOD'S CLAIMS**
**(11 U.S.C. § 502)**

68. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

69. The Trustee objects to each of Wood's Claims, and each of Wood's Claims should be disallowed, on the ground that each is unenforceable against the Debtors and the Debtors' property.

70. Each of Wood's Claims fails to set forth factual allegations and documentary evidence sufficient to establish a claim for purposes of 11 U.S.C. § 502.

71. Each of Wood's Claims should also be disallowed because Wood breached his fiduciary duties, engaged in self-dealing, and was unjustly enriched, as described above.

72. Each of Wood's Claims should also be disallowed as a matter of equity.

73. Based on the conduct described herein, Wood should be estopped from pursuing Wood's Claims.

74. Wood's Claims should be disallowed because Wood waived any rights he may have had to pursue claims against the Debtors.

75. Based on the foregoing, each of Wood's Claims should be disallowed and expunged pursuant to 11 U.S.C. § 502(b).

**NINTH CLAIM FOR RELIEF**
**DISALLOWANCE OF WOOD'S CLAIMS**
**(11 U.S.C. § 502(d))**

76. The Trustee restates and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

77. The Trustee seeks entry of a judgment pursuant to 11 U.S.C. § 502(d) disallowing Wood's Claims unless and until Wood has paid all amounts owing to the Debtors' estates and the Trust.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, the Trustee requests that the Court enter judgment against Wood as follows:

(1) On Claims One through Five, for a determination and judgment that the Personal Transfers from the Debtors are avoided as fraudulent transfers under 11 U.S.C. §§ 544 and 548 and Texas Bus. & Comm. Code §§ 24.005 and 24.006, and that the Trustee is entitled to recover said transfers or the value thereof in an amount to be proven at trial from Wood under 11 U.S.C. § 550;

(2) On Claim Six, for a determination and judgment that Wood is liable for breach of fiduciary duties in an amount to be determined at trial, but which is at least the value of the Personal Transfers;

(3) On Claim Seven, for a determination and judgment that Wood has been unjustly enriched in an amount to be determined at trial, but which is at least the value of the Personal Transfers;

(4) On Claim Eight, for a determination and judgment disallowing and expunging each of Wood's Claims;

(5) On Claim Nine, for a determination and judgment that all claims asserted by Wood against the Debtors, whether filed or scheduled (including but not limited to each of Wood's Claims), are disallowed pursuant to 11 U.S.C. § 502(d) unless and until Wood has paid the amounts sought herein;

(6) Awarding the Trustee interest, costs, and reasonable attorneys' fees under applicable law, including Texas Bus. & Comm. Code § 24.013;

(7) Granting the Trustee such other and further relief as the Court deems just, proper and equitable, including the costs and expenses of this action.

Dated: May 11, 2016

*/s/ Jason R. Searcy*
Jason R. Searcy
SEARCY & SEARCY P.C.
446 Forest Square
P.O. Box 3929

Longview, TX 75606
Telephone: (903) 757-3399
Facsimile: (903) 757-9559
Email: jsearcy@jrsearcylaw.com


Jeffrey N. Pomerantz
Robert J. Feinstein
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0706
Email: jpomerantz@pszjlaw.com
      rfeinstein@pszjlaw.com

*Counsel to the Trustee of the Exempt Assets Trust*